

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00109-CR

ERIC JAMES WORTHLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 53361-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Gregg County jury found Eric James Worthley guilty of driving while intoxicated, third or more. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (Supp.). At punishment, the jury assessed a sentence of ten years' imprisonment, with no fine.

On appeal, Worthley's sole point of error is that the evidence supporting his conviction was legally insufficient. Upon review, we disagree and affirm the trial court's judgment.

## I. Factual Background

Worthley's three-day jury trial began on April 24, 2023, and it ended on April 26, 2023. At trial, Sergeant B.J. Burns, Officer Jonathan Holland, Worthley, and a witness to the offense, Randy Richardson, testified. As a part of its evidence, the State introduced body-camera footage from Burns and Holland.

### A. Testimony of Sergeant Burns

Burns testified that, on January 23, 2022, he was on patrol in Kilgore when he was dispatched to a CEFCO gas station on the suspicion of an intoxicated driver. The call from dispatch came in at 12:40 p.m., and Burns arrived two minutes later to find Holland, Richardson, and Worthley at the scene.

Burns assessed Worthley when he arrived at the scene and found that "he appeared intoxicated." "His movements were slow, his balance wasn't very well." Worthley did not agree to the field sobriety tests and did not cooperate. Burns inventoried Worthley's vehicle and found "three empty smaller wine bottles in the car."

As a part of Burns's testimony, the State introduced his body-camera footage as State's exhibit number 4. The footage showed that Burns cuffed Worthley after he declined field sobriety testing. The footage also showed Burns and Holland collecting three, mostly empty, small plastic bottles of Sutter Home wine from the passenger's side of the car.

### B. Testimony of Richardson

Richardson testified that, just before Worthley's arrest, he was driving with his two youngest sons on 259 South when "a car had come around [him], got in the right-hand lane and was swerving." "[T]he car hit the curb" and "just kind of dusted the curb with his tires and kept going." Richardson identified the driver as Worthley.

Richardson observed Worthley pull up to an intersection and saw him "kind of laid back in his seat like he was asleep." After "[t]he light turned green," Worthley "finally took off." Worthley turned into East Texas Hardware, pulled into the street, and "stopped in the middle of the street." Richardson honked his horn, and Worthley "jump[ed] out of [his] car with a bat." Richardson drove around him, and Worthley "had come back around and ended up in the CEFCO parking lot." Richardson pulled into the CEFCO parking lot and called the police. While Worthley was parked at the CEFCO, he was "tapping his dash with [a bat]" and "looked nervous" and "[a]gitated."

### C. Testimony of Officer Holland

Holland testified that Worthley's car was still running when he arrived on the scene. After Holland exited his patrol car, Worthley turned his car off. Holland observed a baseball bat in Worthley's car and had Worthley step out of the vehicle. When describing Worthley's

conduct, Holland testified, "His speech was slow, slurred; his movements were very lethargic, also slow. As he got out of his vehicle, he had to lean against his vehicle for assistance in standing, balance. He was extremely unsteady on his feet."

After Worthley refused a chance to submit a voluntary blood specimen, Holland obtained a search warrant to authorize a blood draw. Holland took Worthley to the hospital in Kilgore to collect a blood specimen. He arrived with Worthley just before 3:00 p.m., which is over two hours after the initial encounter with Worthley at 12:42 p.m. at CEFCO.

During that hospital visit, Worthley "leaned back and kind of slow motion rolled back onto the floor." Worthley took a few minutes to get back up, and he eventually became belligerent towards Holland. Ultimately, the blood draw was complete, and Worthley's blood alcohol concentration was .308.

### D.    Testimony of Worthley

Worthley testified in his own defense, claimed that the three bottles of wine belonged to his girlfriend, and said he took them because she did not like them. Worthley testified that he had an anxiety attack as he was going through Kilgore and started to look around for a place to eat because he had not eaten that day.

He testified that, during his panic attack, he was not "thinking clearly or seeing clearly." Because of his panic attack, he parked at CEFCO and tried to take his medication for panic attacks. He turned off his car to get in the trunk and then reentered the car. At that time, he "may have" restarted his vehicle. He did not dispute Holland's testimony that his vehicle may have been turned on: "I explained to my lawyer I know I turned it off when I got out of the car

4

to retrieve my bat. I don't think I restarted it, but I'm not positive, so I -- if he says it was on, maybe it was." Worthley also testified that, after he had parked his car, he then "proceeded to drink all three of those bottles" while he was parked. After he drank those bottles, the police showed up.

## II.     Standard of Review

In evaluating legal sufficiency, we review all evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of DWI, third offense, beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Priego v. State*, 457 S.W.3d 565, 568 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). We examine legal sufficiency in accordance with the *Brooks* opinion, while giving the jury deference "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

Legal sufficiency is "measured by the elements of the offense as defined by the hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charges "sets out the law, is authorized by the indictment, does not unnecessarily increase the States' burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

5

Under Texas law, a person is guilty of DWI, third offense, if the person having been two times previously convicted of an "offense relat[ed] to the operati[on] of a motor vehicle while intoxicated,"[1] "is intoxicated[2] while operating a motor vehicle in a public place."[3] Under the present facts, the only issue in dispute is whether Worthley "operated" his vehicle while intoxicated. Worthley claims there is a "complete lack of evidence that, at the time [Worthley] operated his vehicle, he had consumed any alcohol such that he was intoxicated." We disagree.

## III. Legally Sufficient Evidence Supports the Conviction

The facts in this case are very similar to our prior case of *Priego*. In *Priego*, the driver attacked the legal sufficiency of her conviction after "she was found unconscious" in her parked car with the engine running with "[a] partially consumed bottle of whiskey." *Priego*, 457 S.W.3d at 570. After the police were contacted, the driver was taken to the hospital, was found to have a blood alcohol concentration of .478 and was later arrested for DWI. *Id.* at 568–70. Finding a jury could "reasonably infer" she was operating her vehicle while intoxicated, we affirmed the trial court's judgment. *Id.* at 570.

In the present action, the facts in the record provide even greater support than the facts in *Priego* did for the jury to "reasonably infer" Worthley was intoxicated while operating his vehicle. Much like the "partially consumed bottle of whiskey" in *Priego*, Worthley had three

---

[1]TEX. PENAL CODE ANN. § 49.09(b)(2).

[2]"Intoxicated" includes one of the following: "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more." *See* TEX. PENAL CODE ANN. § 49.01(2).

[3]TEX. PENAL CODE ANN. § 49.04(a).

empty bottles of wine in his vehicle. *Id.* In *Priego*, the evidence showed that the driver was parked and unconscious but not necessarily that the vehicle had been driven. *See id.* In this case, Richardson testified Worthley was operating the vehicle, driving erratically, and "dusted the curb." As in *Priego*, there was testimony here that the engine was running, and Worthley does not dispute that testimony. Also, consistent with *Priego* wherein the driver had an extremely high blood alcohol concentration of .478, Worthley's blood alcohol concentration was .308, well beyond the legal limit.

Based upon this evidence and our prior opinion in *Priego*, we find there is legally sufficient evidence for the jury to "reasonably infer" from the facts in the record that Worthley was intoxicated while operating his vehicle. As a result, we deny Worthley's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott Stevens
Chief Justice

Date Submitted: December 22, 2023
Date Decided: February 1, 2024

Do Not Publish

7